Texas Bank & Trust Company of Beaumont v. George W. Smith et al.

No. 2467.   Decided February 28, 1917.

**1.—Owner Defined.**

The word "owner," as generally used, signifies one having the legal title; but it is frequently used in statutes to denote one holding for himself and in his own right, but having less than absolute title. It may be necessary to consult the context to determine in which sense it is used.   (P. 268.)

**2.—Statute—Irrigation—Person "Owning" Land.**

The person "owning" land subject to irrigation, whose lease of water rights may attach a lien on the crops raised on the land so irrigated, under the terms of the statute (Rev. Stats., 1911, art. 5009, sec. 18, p. 25, General Laws of 1895) need not be the absolute owner. One holding by lease could contract with the irrigation company for water supply for his crops, and thereby fix a lien in the company's favor on the crops so raised.   (Pp. 267-272.)

**3.—Statutory Construction.**

The construction given to one section of a statute should be in harmony with other sections and the same term, in different section of the Act, should ordinarily be given the same significance.   (P. 271.)

**4.—Irrigation—Lien—Priority.**

The lien upon crops created by the contract of one holding land with the company furnishing water to irrigate same, by the terms of the statute (Rev. Stats., 1911, art. 5009) takes priority over the lien of the landlord or a mortgage lien, though they were created prior to the making of such contract for irrigation.   (Pp. 272, 273.)

**5.—Same.**

The Legislature may give a statutory lien priority over contract or statutory liens previously attaching, where its object is to secure a charge necessary to the preservation of the property.   (P. 272.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

*Townes, Foster & Hardwicke,* for Texas Bank & Trust Company of Beaumont, appellant.—The Legislature is presumed to have used words in their ordinary sense, and having provided that the lien on the crop should exist only when the contract to furnish water was made with the person owning the land subject to irrigation, a tenant, having no title and only a limited right to the use of the land, could not, in the face of the unambiguous wording of the statute, be considered as owning land or as coming within the provisions of the law. Construction of statutes:   Art. 5502, Rev. Stats.; Turner v. Cross, 83 Texas, 218; Campbell v. Cook, 86 Texas, 630-635; T. & P. Ry. Co. v. Railroad Commission, 105 Texas, 386; Michael v. Michael, 79 S. W., 74; Gross v. Colonial Assur. Co., 121 S. W., 517; Warner Elevator Co. v. Maverick, 88 Texas, 489. Definition of "owner": Turner v. Cross, supra; Campbell v. Cook, supra; Cox v. Robinson, 105 Texas, 426, 150 S. W., 1149, 1155; Galveston Ex. Assn. v. Perkins, 80 Texas, 62; American Woolen

Co. v. Town Council, 29 R. I., 93; In re Sherry, 25 Misc., 361, 55 N. Y. Supp., 421; Johnson v. Crookshanks, 21 Ore., 339; McLain v. Maricle, 60 Neb., 353, 358; Smith v. Improvement Dist., 156 S. W. (Ark.), 455, 456; West v. Washington & C. R. R., 90 Pac. (Ore.), 666; Barclay v. State, 47 So. (Ala.), 75; In re Riddell, 116 N. Y. Supp., 261, 264; In re Clement, 101 N. Y. Supp., 447, 450; Crary v. Chicago, etc., Ry. Co., 100 N. W., 18; Bouvier, Law Dictionary; Black, Law Dictionary; Anderson, Law Dictionary; Century Dictionary; Webster's Dictionary.

The mortgage in favor of the Texas Bank & Trust Company was executed and filed for registration prior to the time of the execution of the contract to furnish water made by Smith with the irrigation company, and, therefore, the mortgage lien is superior to any statutory lien in favor of the irrigation company. Rights vested under a valid and subsisting mortgage can not be avoided or affected by acts of mortgagor without consent of mortgagee. Moving mortgaged property on rented premises does not postpone mortgage lien in favor of landlord's lien. Kennedy v. Davis & Bro., 2 Posey, 77; H. R. E. B. & B. Assn. v. Cochran, 60 Texas, 620; Brackenridge v. Millan, 81 Texas, 17; Rogers v. Grigg, 29 S. W., 654; Austin v. Welch, 31 Texas Civ. App., 526, 72 S. W., 881; Low v. Troy Laundry Mach. Co., 160 S. W., 136. When mortgaged property is placed in a warehouse for safekeeping, the mortgage lien is not postponed in favor of the warehouseman's lien. Jones on Liens, 3d ed., par. 971. When a mortgaged animal is placed in a livery stable the mortgage lien is not postponed in favor of the liveryman's lien. Stott v. Scott, 68 Texas, 302; Blackford v. Ryan, 61 S. W., 161; Masterson v. Pelz, 86 S. W., 56; McGhee v. Edwards, 87 Tenn., 506, 11 S. W., 316; Farney v. Kerr (Tenn.), 48 S. W., 103; 11 Ann. Cas., 1043; 32 Ann. Cas., 315; Jones on Liens, 3d ed., par. 691. Lien for work on personal property is not superior to a mortgage lien existing at the time the work was done. Jesse French P. & O. Co. v. Elliott, 166 S. W., 29.

*Lipscomb & Williams,* for Beaumont Irrigating Company.—The lien of an irrigating company given by statute to secure its reasonable charges for water necessary to grow a crop of rice (to the owners of which it owes a statutory duty of furnishing water), will not be postponed to liens of others on such crop where the holders of such other liens know of and acquiesce in the creation of the lien for water rates. Arts. 3125 and 3130, Rev. Stats. of Texas; Hotel Co. v. Griffith, 88 Texas, 581; Brooks v. Railway Co., 101 U. S., 451; Farney v. Kerr (Ky.), 48 S. W., 103.

As title and right varies from fee simple to that of mere occupant, so the word "ownership" varies according to context and subject matter. Peterson v. Johnson, 132 Wis., 280; Chicago, R. I. & P. R. Co. v. State, 84 Ark., 409; Iroquois Co. v. Meyer, 80 Ohio St., 676; Block v. Pearson, 19 Okla., 422; Robinson v. Schlitz, 115 S. W., 472.

*Geo. D. Anderson,* for appellee McDonald and others.—An irrigating company has no statutory lien for its charges for water furnished to a tenant, where such irrigating company has no contract therefor with the owner of the land. Rev. Stats., arts. 3130, 3125.

Mere knowledge, by a land owner, that his tenant will require water from an irrigating company, will not subordinate the landlord's lien on the crop, expressly retained by the landlord, to any lien which may be created by the tenant on the crop for water rent. Rev. Stats., art. 3135.

Mr. Chief Justice PHILLIPS delivered the opinion of the court.

The case presents a controversy between an irrigation company, certain landlords, and a mortgagee with respect to the existence and priority of the lien claimed by the irrigation company.

In the year 1909 one George W. Smith was in possession of certain lands leased by him from the owners, using the same for a rice farm. To successfully grow rice on the land irrigation was necessary, and the only water accessible for the purpose was that from the canals of the irrigation company. In July of 1909 Smith entered into a contract with the irrigation company, by the terms of which water for irrigation purposes was to be furnished him by the company for an agreed price. Prior to the making of this contract Smith had executed a mortgage to a banking company to secure the payment of money loaned him to be used in growing the rice crop. This mortgage was duly registered before the irrigation contract was made. The owners of the land knew at the time their leases were made to Smith that his purpose was to cultivate the land in rice, as did also the banking company at the time it took its mortgage.

Default having been made by Smith in the payment of rent due by him for some of the land, the owner of such land, one of the landlords, filed suit for the rent due and for foreclosure of the landlord's lien upon the crop of rice thereon grown. Afterwards the irrigation company filed a separate suit seeking the recovery of the amount due by Smith under the water contract and a foreclosure of a lien upon the entire crop. The two suits were consolidated. The banking company intervened, setting up its mortgage lien, as did also the other landlords asserting their landlord's liens.

The questions propounded by the honorable Court of Civil Appeals are as follows:

"1. Smith being a lessee, and not the owner of the land, and the contract for water having been made with him and not with the land owners, did. the irrigating company, by its contract made with Smith and by furnishing water for the irrigation of the crops in pursuance thereof, acquire a lien on the crops so irrigated by virtue of the provisions of article 3130 of Sayles' Civil Statutes?

"2. If the foregoing question is answered in the affirmative, then we ask, was such lien superior to the mortgage lien of the Texas Bank

& Trust Company, and to the liens of the land owners for the rents of their lands?"

The statute in force in 1909 with respect to the lien of an irrigation company upon crops grown on land for the irrigation of which it had furnished water, was in these words:

"Every person, corporation or association of persons which has heretofore constructed or which may hereafter construct any ditch, canal, dam, lake or reservoir for the purpose of irrigation, and who shall lease or rent the water from said ditch, canal, dam, lake or reservoir to any person or association of persons or corporation owning any lands subject to irrigation from any such ditch, canal, lake, dam or reservoir, such person, corporation or association of persons owning such ditch, canal, lake, dam or reservoir shall have a preference lien, superior to every other lien, upon the crop or crops raised upon the land thus irrigated under such lease or contract." Act of 1895, sec. 18 (General Laws of 1895, p. 25); art. 3130, Sayles' Civil Statutes of 1897; art. 5009, Rev. Stats., 1911.

The term "owner," as generally used, signifies one who has the legal or rightful title. But this is not always the sense in which it is employed. It is not rigid in meaning, and in statutes is not infrequently used to denote one holding for himself and in his own right but having less than an absolute title. Its meaning depends in a great measure upon the context and the subject matter to which it is applied. Thus in statutes defining duties of railroads and denouncing a penalty against the corporation "owning the railroads," or exacting certain requirements of the companies "owning the tracks," the corporation in control of and operating the railroad, though simply a lessee of the property, is an "owner" within the meaning of such statutes. State v. St. Louis & S. F. R. R. Co., 46 Mo. App., 466; Baltimore & O. R. R. Co. v. Walker, 45 Ohio St. Rep., 577, 16 N. E., 475; Chicago, R. I. & P. Ry. Co. v. State, 84 Ark., 409, 106 S. W., 199. In an action to recover the possession of real estate, to maintain which only a possessory title was necessary, a tenant for years properly alleged himself to be "the owner" of the real estate. Parker v. Railroad Co., 79 Minn., 372, 82 N. W., 673. Other cases illustrating like uses of the term are Schott v. Harvey, 105 Pa., 222; Camp v. Rogers, 44 Conn., 291; Peterson v. Johnson, 132 Wis., 280, 111 N. W., 659. The last case concerned a statute imposing the duty on "the respective occupants of adjoining lands, used and occupied for farming purposes," of maintaining partition fences, unless they should otherwise mutually agree. It then provided: "And owners of lands who do not maintain and keep in repair lawful partition fences shall not be entitled to recover any damages whatever for trespasses by the animals of owners of any adjoining lands with whom partition fences might have been maintained if such lands had been inclosed." The word "owners" as used in the quoted part of the statute was held to include persons designated by the word "occupants" in the preceding part.

That the term may signify one whom the owner of the title has clothed with the possession and control, is recognized by this court. In the opinion of Chief Justice Stayton in Turner v. Cross and Eddy, Receivers, 83 Texas, 218, 15 L. R. A., 262, 18 S. W., 578, in speaking of the terms "owner" and "proprietor," this is said:

"Both words are doubtless often used to express right to property in a thing less than absolute or exclusive right, but when this occurs it will ordinarily appear from the context, and in all such cases the person holds for himself and in his own right; and as stated in brief of counsel, 'the right of such a person to the possession and control springs not from an act to which the concurrence or consent of the owner is not required, as in the appointment of a receiver, but from the direct act of the owner or proprietor, who thereby clothes the person placed in the possession and control with the right to operate the same for his own benefit.'"

The sense in which the term "owning" was used in that part of the statute under consideration which requires that the lease of water be to one "owning" the lands to be irrigated, in order for the irrigation company to have the statutory lien upon the crops thereon grown, can not be accurately determined without consulting the context of the act of which the statute was a part. As already noted, the statute was section 18 of the Act of 1895. Section 11 of the Act as amended at the same session (General Laws of 1895, page 27; art. 3125, Sayles' Civil Statutes of 1897), throws a distinct light upon the question, since it is the part of the act which deals with the duties of irrigation companies chartered under it or the general laws, defines the classes of water rights which may be sold or leased, and designates those entitled to obtain them.

After authorizing the formation of corporations with the powers conferred by the Act, this section declares:

"All such corporations shall have full power and authority to make contracts for the sale of permanent water rights, and to have the same secured by liens on the land or otherwise, and to lease, rent or otherwise dispose of the water controlled by such corporation for such time as may be agreed upon, and in addition to the lien on the crops hereinafter provided for, the lease or rental contract may be secured by a lien on the land or otherwise."

This is a general provision designating the kinds of water rights which irrigation companies may grant to consumers. They are of two distinct classes, permanent water rights, and those of a limited duration. This distinction is important, and materially aids in the interpretation of section 18. Permanent water rights, this provision contemplates, are to be sold. Other water rights are to be leased or rented. The former are to be evidenced by contracts of sale; the latter by contracts of lease. With whom are such respective classes of contracts to be entered into, and how are they to be secured? Contracts for the sale of permanent water rights are to be made, of course, with the

owner of the title to the land. As to their security, it is declared that they may be secured by liens on the land, which could be validly given only by an owner of the title, or by means of other security. As to lease contracts, no limitation, whatever, is imposed in respect to the classes of persons with whom they may be made. The authority to make such contracts is conferred in the broadest terms. There is no hint in the provision of a power to make them with only the owner of the title to the land, to the exclusion of a tenant in rightful control and possession who might need the water for his use. Its language, as well as the spirit of the act, repudiates the view that a tenant in possession is to be dependent upon the owner of the title for his water supply, wholly deprived of the right to contract for it, and altogether excluded from the benefits of the act unless the owner of the title sees fit to lease the water necessary for his use. The only reasonable construction of this provision is that it authorizes the making of lease contracts with either a tenant in possession or the owner of the title.

What security does the act provide for this class of contracts? The answer to this inquiry is to be found both in the provision above quoted and in section 18, constituting the statute under consideration, since both relate to this same subject and by direct reference one is substantially made a part of the other. The above provision recognizes and declares that such contracts are to be secured, primarily, by the statutory lien upon the crops conferred by section 18, though providing that they may be additionally secured by a lien on the land or otherwise. Its language is that they, "in addition to the lien on the crops hereinafter provided for,—(the lien conferred by section 18), may be secured by a lien on the land, etc." The express lien upon the land for the security of such contracts could be validly given only by the owner of the title. But was the statutory lien upon the crops when grown by a tenant in possession to be dependent in all cases upon the existence of a water lease contract with the owner of the title? To so assume is either to introduce a conflict between section 18 and the provision above quoted, or to impose a limitation upon the latter not expressed, and which the generality of its terms excludes. The construction to be given the provision quoted in respect to the persons with whom the making of lease contracts is authorized, is, as already stated, that they may be made with either a tenant in possession, or the owner of the title. It expressly declares that the security for such contracts shall be, primarily, the statutory lien upon the crops conferred by section 18. Under this provision, therefore, such contracts would stand so secured, whether entered into either by a tenant in possession or the owner of the title. To construe section 18 as meaning that they are to be secured by the statutory lien only when made with the owner of the title would, accordingly, contradict the plain intendment of the above provision. In the construction of the two provisions they are to be harmonized, if their terms reasonably admit of it, so that both may be given consistent effect. This may be done

only by either assuming that in authorizing the making of lease con-
tracts the Legislature intended they should be made with only the
owner of the title, thus depriving a tenant in possession of all right
in his own behalf to contract for and obtain water for his use, and
placing his right to water at the entire disposal of his landlord,—a
construction not only opposed by express provisions of the act, as will
be later shown, but which would subject the tenant to an injustice
that it is not reasonable to believe the Legislature intended, or con-
struing the word "owning," used in section 18, in its broader sense,
and as, therefore, including a tenant in rightful control and possession
of the land.   The term in legal effect admits of that construction, and
as used in this statute such meaning should be given it.

It is difficult to believe that since the Legislature in conferring the
authority for the making of lease contracts did not limit its exercise
to only the owner of the title, its purpose was, nevertheless, to confine
the benefits of the statutory lien provided for their security to only
such as an owner of the title might make.   It is more reasonable to
conclude that the intention was that the lien thus furnished for this
class of contracts should apply to all authorized contracts of the class.

That the Act, in terms, authorizes the making of such contracts
directly with the owner of only a possessory title to the land, as dis-
tinguished from an owner of the absolute title, and declares it to be
the duty of irrigation companies to furnish such an owner water in
his own right, is shown by this further provision of amended section 11:

"All persons who own or hold a possessory right or title to land
adjoining or contiguous to any canal, ditch, flume or lateral con-
structed and maintained under the provisions of this chapter, and who
shall have secured a right to the use of water in said canal, ditch,
flume, lateral, reservoir, dam or lake, shall be entitled to be supplied
from such canal, ditch, flume, lateral, dam or lake with water for
irrigation of such land, and for mining, milling, and stock raising in
accordance with the terms of his or their contract."

The declaration that the owners of a possessory title to land adjoin-
ing any canal, etc., who shall have secured the right to the use of
water in the canal, shall be entitled to be supplied with water "in
accordance with the terms of his or their contract" could reasonably
contemplate nothing less than their right to make such contracts for
themselves.

It thus also appears that in this part of the act the holder of only
a possessory right to the land is recognized as the "owner" of a species
of title.   This serves to explain the meaning of the term "owning" in
section 18.   It is not to be assumed that the term was used in the
latter section in a sense wholly different from that in which it was
employed in another section of the identical act with reference to the
same subject matter.   The more reasonable view,—and such is a pri-
mary rule of construction, is that it was used in a consistent sense in
both sections.

The second question is settled by the statute. It declares that the lien it provides shall be "superior to every other lien." All liens for which the law then made provision must have been taken into account in the enactment of the statute. Being the later act, this declaration could only mean that all such statutory liens should be subordinate to the lien which it was the purpose of the act to confer, whether in force or not when, the latter attached. As to the landlord's lien, this is necessarily true as applied to a water lease contract made with a tenant. In no case could such a contract be well made with the tenant until he had acquired his right to the land by lease from its owner, which, as a rule, marks also the time of the creation of the rental indebtedness and, accordingly, the inception of the landlord's lien. To hold that the existence of the landlord's lien renders inferior the irrigation company's lien, would make meaningless the declaration of the statute that the latter shall be "superior to every other lien."

As applied to contract liens, this is also true. Such liens subsequently created would, without this declaration, be subordinate because inferior in point of time. With respect to contract liens, therefore, this declaration is without force unless it has reference to those in existence when the lien of the statute accrues.

Ordinarily, a statutory lien will not be given precedence over an existing and duly registered lien. But there is no question as to the power of a Legislature to give a statutory lien such priority where its object is to secure a charge necessary for the preservation of the property. Jones on Chattel Mortgages, sec. 474.

An instance of liens having this priority, independently of any statute provision, is the maritime lien upon vessels for repairs necessary to maintain their seaworthiness. The expenditure for such repairs inures to the benefit of the mortgagee, and is as much to his advantage as to the mortgagor. For this reason the mortgage lien, though prior in time, is made subordinate. Scott v. Delahunt, 65 N. Y., 128; Provost v. Wilcox, 17 Ohio St., 359; Hammond v. Danielson, 126 Mass., 294.

For a stronger reason should the lien conferred by the statute under consideration be held superior to a prior mortgage lien. It is to secure indebtedness for the water which helps to create the property upon which the mortgage lien is given, without which the property might not have existence. The theory of the statute is that holders of prior liens upon the crops to be grown on the irrigated land are not prejudiced, but aided by the furnishing of the water necessary to their growth. It is for this reason, plainly, that the lien to secure the water charges is given its superior rank.

Cases holding that a lien upon property subsequently moved on rented premises is superior to the landlord's lien, furnish no analogy, and do not control the question. In such instances the tenant's indebtedness for rent due the landlord has no possible relation to the preservation of the property, and, consequently, there could be no

reason for holding that it was the purpose of the Legislature to displace the existing lien.

Nor does the decision in Blackford v. Ryan, 61 S. W., 161, by the Court of Civil Appeals for the Fifth District, have any bearing upon the question. It was decided there that the lien given by article 3319, Revised Statutes of 1895, to a livery stable keeper for the care of a horse was subordinate to an existing mortgage lien, duly registered at the time the horse was placed in the stable. That article gave merely "a special" lien upon animals fed and cared for in such stables. It contained no declaration that it should be "superior to every other lien." In addition, it was provided by article 3326 of the same title: "Nothing in this title shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law or in equity, or by any statute of this State, or any other lien not treated of under this title." The latter article would alone serve to maintain the priority of the existing mortgage in such a case. Masterson v. Pelz, 86 S. W., 56.

Both questions are answered in the affirmative.