## HOUSTON NAT. EXCH. BANK OF HOUSTON v. De BLANC.  (No. 885.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 19, 1923. Rehearing Denied Jan. 31, 1923.)

1. **Venue ⬉6—Suit to enforce equitable lien is maintainable where property is situated.**

A suit to enforce an equitable lien upon cattle was properly brought in the county where the cattle were situated under Rev. St. art. 1830, subd. 12, so that a defendant's plea of privilege to be sued in another county where it resided was properly overruled.

2. **Animals ⬉26(3)—Caretaker has equitable lien on mortgaged cattle.**

One who was employed by the owner of mortgaged cattle with the consent of the mortgagee to care for the cattle, and who accepted money and rendered services which were necessary for the preservation of the cattle, has an equitable lien upon the cattle for his labor and expenditures.

3. **Animals ⬉26(3)—Implied consent of mortgagee to employment of caretaker sufficient.**

An implied consent by the mortgagee of cattle to the employment of a caretaker is suf-

ficient to sustain the equitable lien of the caretaker for his services and expenditures.

**4. Animals 🔑26(3)—Consent of mortgagee to caretaker's employment presumed from failure to object.**

When cattle are mortgaged and left in the possession of the mortgagor, under circumstances from which the mortgagee may be presumed to have understood the mortgagor would place them in charge of a caretaker, and no objection is made to the employment of such caretaker, the consent of the mortgagee to the employment should be implied.

**5. Animals 🔑26(3)—Mortgagee's consent to employment of caretaker implied.**

Where the mortgagee of a large herd of cattle, which by the terms of the mortgage were to be left in possession of the mortgagor, knew that the mortgagor was Governor of the state and that his permanent residence was in a county different from that in which the cattle were being kept, it must have known that some care and attention and some expenditures were necessary for the preservation of the mortgaged cattle, so that its consent to the employment of such caretaker may be implied from its failure to object thereto.

**6. Chattel mortgages 🔑138(1)—Equitable lien of caretaker superior to chattel mortgage.**

The equitable lien of the caretaker of cattle for labor and expenditures in preserving them is superior to a chattel mortgage.

**7. Chattel mortgages 🔑138(1)—Statute does not affect priority of equitable lien.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 5671, providing that nothing in the title on liens shall affect or impair other liens arising at common law or in equity, does not affect the superiority of the equitable lien of the caretaker of cattle over a chattel mortgage.

Appeal from District Court, Liberty County; J. L. Maury, Judge.

Suit by M. A. De Blanc against James E. Ferguson and the Houston National Exchange Bank of Houston, Texas. From a judgment for plaintiff against defendant Ferguson, establishing a lien on property superior to the mortgage held by the bank, the bank appeals. Affirmed.

Love, Wagner & Wagner, of Houston, for appellant.

E. B. Pickett, Jr., of Liberty, for appellee.

O'QUINN, J. The following statement of the nature and result of the suit is taken from the brief of appellant, the same being accepted as correct by appellee:

"This was an action in debt instituted by M. A. De Blanc against James E. Ferguson of Bell County, Tex., and the Houston National Exchange Bank of Houston, Tex., the basis of the action being the contract of employment between plaintiff and defendant Ferguson. The Houston National Exchange Bank was made a party to the action because of the fact that it had a chattel mortgage on the stock and cattle which plaintiff claimed were subservient to a lien in plaintiff's favor. The contract between plaintiff and the defendant Ferguson was one whereby the plaintiff was employed to oversee and be responsible for the safety of the cattle in question which were located in Liberty county, Tex. Plaintiff was to receive the sum of $75 per month for his services. The exact term of employment does not appear, either in the petition or from the statement of facts, nor does the date of the beginning of the employment, nor the date of its termination. In addition to his duties of taking care of and watching the cattle, it appears that plaintiff had the further duty of doctoring the cattle when they should fall sick, freeing them of any diseases to which they might become subject, and dipping them at stated intervals. Plaintiff alleged to be due him the sum of $686.29 on sworn account, which was the balance due for wages for the year 1921 at $75 per month, and added thereto for miscellaneous items of money spent in the way of dipping cattle, hauling, building pens, worm medicine, feed bill, and gasoline for the maintenance of a pump located on the land where the cattle were grazing. Plaintiff predicated his claim for a lien upon the services performed and the expense money that he advanced in making the various purchases and incurring the various expenses and upkeep and maintenance.

"The Houston National Exchange Bank duly filed its plea of privilege, which was controverted by plaintiff, and plaintiff and defendant the Houston National Exchange Bank then entered into an agreement to have the case tried on its merits subject to the exceptions of defendant the Houston National Exchange Bank, taken at the overruling of the plea of privilege. The Houston National Exchange Bank then filed its amended answer, which consisted of a general demurrer, general denial, and special denial, alleging that on October 7, 1916, defendant Ferguson, for a valuable consideration, executed and delivered to defendant the Houston National Exchange Bank his promissory note for the principal sum of $39,000, payable to the order of the Houston National Exchange Bank, dated October 7, 1916, due six months after date, bearing interest at the rate of 8 per cent. per annum from date until paid, and to secure said indebtedness the said Ferguson executed and delivered to the defendant the Houston National Exchange Bank a chattel mortgage on all of the cattle described in plaintiff's original petition, which chattel mortgage was duly filed, registered and indexed in the chattel mortgage records of Liberty county, Tex. That the said promissory note was renewed and extended from time to time by defendant Ferguson by his executing and delivering to the defendant the Houston National Exchange Bank his certain promissory notes, each for the principal sum of the unpaid balance of the last preceding note, said extensions running from the period of May 1, 1917, to December 6, 1920, when the unpaid balance was $26,826.52; and that on the 10th day of September, 1921, defendant the Houston National Exchange Bank was still the legal owner and holder of the last-mentioned renewal promissory note, and was the legal

owner and holder of the chattel mortgage lien as above set out, and that on the last-mentioned date there was due and owing and unpaid on the last renewal note the sum of $23,034. That on said date the defendant Ferguson delivered to the defendant the Houston National Exchange Bank his certain promissory note dated September 10, 1921, for the sum of $23,034, due and payable one year from date, bearing interest at the rate of 10 per cent. per annum from maturity until paid, which last-named note was in renewal and extension of the original note of October 7, 1916, for $39,000, as above described, and that to secure the payment of the note of September 10, 1921, for the sum of $23,034, the defendant Ferguson gave his certain chattel mortgage of the same date, providing that it was given to secure the defendant Ferguson's present and future indebtedness to the defendant the Houston National Exchange Bank, and that it was an extension of the chattel mortgage theretofore given on the 7th day of October, 1916, and that the chattel mortgage of September 10, 1921, should not in anywise affect the chattel mortgage given on October 7, 1916, but was a continuation of the earlier chattel mortgage and was executed for the purpose of better securing the said the Houston National Exchange Bank. That the more recent chattel mortgage was duly filed and indexed in the chattel mortgage records of Liberty county, Tex., and that the defendant the Houston National Exchange Bank is the legal owner and holder of the note of September 19, 1921, for $23,034, and of the chattel mortgage securing the same. It is specially denied that plaintiff's lien was superior to the chattel mortgage lien of the defendant the Houston National Exchange Bank, and averred that plaintiff had notice of the chattel mortgage lien owned and held by said the Houston National Exchange Bank, and that said bank at no time employed plaintiff to perform any services for it or agreed to furnish any supplies to Ferguson, and that it at no time promised or agreed to pay plaintiff for any services rendered or supplies or medicine furnished by him, and at no time had it any notice or knowledge of the fact that plaintiff was engaged in caring for the cattle and furnishing medicine and supplies for their care and preservation, and its first knowledge of such fact was when it was served with citation in this cause. That by virtue of the giving of the two mortgages the Houston National Exchange Bank is the holder of two valid and subsisting chattel mortgage liens covering the cattle described in plaintiff's petition, and that the two chattel mortgage liens are prior in point of time and superior in law to any lien held or claimed by the plaintiff, and if plaintiff is entitled to any lien on the cattle described in plaintiff's petition, such lien is inferior to the chattel mortgage liens owned and held by the defendant the Houston National Exchange Bank; and prayed that the plaintiff take nothing as against this defendant.

"The case coming on for trial, judgment by default was rendered against the defendant James E. Ferguson, for $711.29, and the lien held by the plaintiff adjudged to be an equitable lien on the cattle situated in Liberty county, Tex., of a certain brand and quantity, and the said lien ordered foreclosed as against the defendant Ferguson and the defendant the Houston National Exchange Bank, and the said equitable lien decreed to be superior to and entitled to priority over the two mortgage liens asserted by said defendant the Houston National Exchange Bank, and an order of sale ordered issued to the sheriff of Liberty county directing the seizure and sale of said cattle.

"The appellant gave notice of appeal from said judgment, and thereafter in due course filed its supersedeas bond, and its assignments of error and statement of facts, and the case is now before this court for review."

The court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"First. I find that some time prior to January 1, 1921, the plaintiff, M. A. De Blanc, entered into a verbal agreement and contract with the defendant, James E. Ferguson, upon the terms and conditions as alleged in plaintiff's original petition filed herein; and further I find that the plaintiff complied with his said agreement and contract in every respect, as alleged in his said petition, and that during the year 1921, if the plaintiff had not properly attended to and cared for the stock of cattle in question practically all of said stock of cattle would have died, because in order to save them it was absolutely necessary to dip them as plaintiff did do and to properly doctor the many of them that were suffering from worms, as plaintiff did doctor them.

"Second. I find that the said defendant James E. Ferguson did not comply with his agreement and contract to pay plaintiff the compensation plaintiff earned under said contract, to the extent and including the several items set forth in the exhibit 'A' attached to plaintiff's petition, the amount therein stated being $686.29; and further I find that one of the credits allowed in said statement, that is, one of such credit items listed as a check for $25, should have been deducted from said credits as said check was not paid, and that amounts should be added to the said total of $686.29, so the aggregate amount due plaintiff by said defendant, Ferguson, aggregates the sum of $711.29.

"Third. I find that on the 7th day of October, 1916, the defendant, James E. Ferguson, executed and delivered to the defendant the Houston National Exchange Bank a note for $39,000, payable to said bank six months after date with interest at 8 per cent., and that on the same date a chattel mortgage was executed by said Ferguson upon the stock of cattle in question, to secure the payment of said note, said mortgage being filed for record on October 9, 1916, in Liberty county, Tex., and is recorded in volume 12, p. 88, of the Chattel Mortgage Register of Liberty county; and further I find that the said note for $39,000 was thereafter renewed on various occasions, the first renewal being on May 1, 1917, when a renewal note was executed by said Ferguson for $31,226.65, and the last of said renewals occurred on the 10th day of September, 1921, when Ferguson executed to said bank a note for the sum of $23,034, which note the said

bank is now the owner and holder of, and said Ferguson did owe the bank that balance on the original indebtedness which was represented by the note of date October 7, 1916, for $29,000, and the bank has continued to hold the original note for $39,000, and each renewal note would be for the sum equal to the unpaid balance on the previous next preceding note. And when each succeeding renewal note was executed, no new chattel mortgage was executed, until the renewal note of date September 10, 1921, for $23,034, and when that note was executed, the defendant Ferguson also executed a chattel mortgage upon the stock of cattle in question, said mortgage being dated the 10th day of September, 1921, and the same reads that it was given 'to secure the payment of my present indebtedness to the Houston National Exchange Bank of Houston, Tex., in the sum of $25,604.12, as evidenced by my note or notes, as well as all past indebtedness and any and all future indebtedness which may hereafter at any time be incurred by me in favor of the Houston National Exchange Bank of Houston, Tex., with interest thereon, as provided in any note or notes or other evidence of indebtedness held by the Houston National Exchange Bank.' This mortgage was filed for record in Liberty county on September 29, 1921, and recorded in volume 20, p. 110, of the Chattel Mortgage Records of said county.

"Conclusions of Law.

"First. I conclude that the plaintiff, M. A. De Blanc, should have judgment against the defendant, James E. Ferguson for the sum of $711.29, and that to secure said amount, the plaintiff is the owner of and holds an equitable lien upon and against the stock of cattle in question, and that he is entitled to a judgment foreclosing said lien as against said Ferguson and also as against the defendant the Houston National Exchange Bank, as I further hold that plaintiff's said equitable lien is superior to the chattel mortgage lien asserted by the said defendant the Houston National Exchange Bank."

[1] Appellant's first proposition is that the court erred in overruling its plea of privilege to be sued in the county of its residence, Harris county. No error is shown. Under the facts of the case, which are in no way disputed by appellant, we hold that appellee had an equitable lien upon the cattle to secure the payment of his wages and advances furnished, and, as the cattle were situated in Liberty county, the suit was properly brought there. Article 1830, subd. 12, R. S.

[2] Appellant's second proposition is:

"The trial court erred in its conclusions of law upon which its judgment is predicated, wherein it concluded that by reason of the plaintiff's oral contract of employment with the defendant Ferguson, to attend to and care for Ferguson's cattle, the plaintiff was the owner of and entitled to an equitable lien upon the said cattle."

The undisputed facts show, in addition to those found by the court, that the cattle were located in a pasture near the town of Liberty, consisting of some 2,900 acres, through which a very boggy drain ditch ran: that the cattle would bog down in said ditch and plaintiff would have to pull them out; that the fence around said pasture was very bad, and plaintiff was constantly working on and mending same to keep in the cattle; that what is called screw worms were very bad, and that constant attention had to be given the cattle in order to keep said worms from destroying them; that the cattle had to be dipped at regular intervals to keep them free from ticks; that the increase of the cattle had to be branded, and, the sick and crippled cattle doctored and water for them procured by pumping. Appellee, among other things, testified:

"I would go out there about three or four times a day and sometimes I would go to work, at 2 or 3 o'clock in the morning. I don't think I missed a day being out there in person, regardless of the weather or anything else."

All these things were necessary and proper for the preservation and protection and betterment of the cattle, and the money expended for hauling, labor, medicine, dipping material, keeping up the fence, pumping water, etc., were for the benefit of the property upon which appellant's mortgage rested, and a direct benefit to same. This is in no wise disputed by appellant.

There is no complaint that the findings of fact by the court are not supported by the evidence, nor is it denied that the defendant Ferguson justly owed appellee the amount for which appellee recovered judgment, and that such sum was due appellee as wages for labor and services performed by him under his contract with Ferguson, in attending to preserving and protecting the cattle in question, and in part for money advanced by appellee to purchase medicine and supplies necessary for the care and preservation and betterment of said cattle.

In defining and describing the nature of an equitable lien, it is said:

"An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings." Jones on Liens, § 27.

"Equitable liens are such as exist in equity and of which courts of equity alone take cognizance. Such a lien is neither a jus in rem nor a jus ad rem. It is not an estate or property in the thing itself, nor does it constitute a right of action for the thing. It is simply an incumbrance or charge upon it. This is not very definite, but, as has been said by a distinguished jurist, 'the words equitable lien are intensely undefined.'" 19 A. & E. Ency. of Law (2d Ed.) p. 12.

"In some cases, though there be no express

agreement, equity gives a lien or a right equivalent to a lien, when in no other way the rights of the parties can be secured. Such implied limits are based upon those broad ethical principles which are embodied in the maxims which lie at the foundation of equity jurisprudence." 19 A. & E. Ency. of Law (2d Ed.) p. 19.

"An equitable lien is one which a court of equity recognizes as distinct from strictly legal rights. and is always ready to enforce, regardless of what rights the applicant may have in a court of law. The term 'equitable lien' merely denotes a charge of incumbrance of one person upon the property of another. It is not a right of property in the subject-matter of the lien nor a right of action therefore, nor does it depend upon possession; but is merely a right to have the property subjected to the payment of a debt or claim, and it applies as well to charges arising by express engagement of the owner of the property as to a duty or intention implied on his part to make the property answerable for a specific debt or engagement." 25 Cyc. 662, 667.

We believe the rule is well established that when personal property has been mortgaged and the chattel is left in the possession of the mortgagor, and the nature of the property is such that it may reasonably be expected that during the term of the mortgage, constant care and attention, including labor and expenses, will be necessary to preserve the property, and that such labor and expense will enhance the value of the property, and the property is placed in the hands of a third party by the person in possession, for such purpose, then the person performing such labor and incurring such expenses, has a lien on such property for the payment of his labor and expenditures made by him for the protection and benefit of the property. Bank v. Laughlin (Tex. Civ. App.) 210 S. W. 617; Malcolm v. Sims (Tex. Civ. App.) 164 S. W. 924; Bank v. Grocery Co. (Tex. Civ. App.) 135 S. W. 1138; McIlhenney v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 705; 19 Ency. of Law, pp. 12–19; 25 Cyc. 662–667; Jones on Liens, § 744. The labor and expense in such case are for the benefit of both the mortgagor and the mortgagee, and the mortgagor having been left in the possession of the mortgaged property, has implied authority from the mortgagee to incur, upon the faith of the property, whatever expenses are necessary for its preservation. Jones on Chattel Mortgages, 474; Association v. Cochran, 60 Tex. 625.

[3, 4] But appellant insists that it did not know of or consent to the charges of appellee. Undoubtedly an implied consent will answer the requirements of the law, and in every case of this kind the inquiry is whether implied consent is shown. That depends, when animals are mortgaged and are left in the possession of the mortgagor,. not only upon the terms of the express contract relating to them, but also upon all the circumstances surrounding the transaction indicating the expectancy of the mortgagee as to the management of them by the mortgagor. If from these the mortgagee may be presumed to have understood that the mortgagor would place them in charge of a caretaker for him to do all necessary things for their preservation and betterment, and no objection is made, such consent should be implied. Jones on Chattel Mortgages, § 473, p. 688; 17 R. C. L. § 14, p. 605; Lynde v. Parker, 155 Mass. 481, 30 N. E. 74.

[5] Then what were the circumstances surrounding the mortgage of cattle in question by Ferguson to appellant? The mortgagor, Ferguson, at the time the first note and mortgage were given, October 7, 1916, was Governor of the state of Texas, residing in Austin, Travis county, Tex., which fact must have been well known to the mortgagee (appellant) and, besides, the first mortgage recited that Ferguson was a resident of Bell county, Tex., temporarily residing in Travis county, Tex., and that the cattle mortgaged were situated on leased premises in Liberty county, Tex., and were to remain in the possession of the mortgagor. The note to secure the payment of which the mortgage was given was renewed a number of times, and the second mortgage was given September 10, 1921, and it recited that Ferguson resided in Bell county, Tex., and that the cattle were on leased premises in Liberty county, Tex., which facts had been known to appellant since the execution of the first mortgage, five years before. As a matter of common information, appellant must be held to have known that cattle on the range or in a large pasture (the record shows that the pasture in which the cattle were held contained some 2,900 acres), were property of such nature that constant attention and some expenses were necessary for their protection, preservation, and betterment, such as medical attention when sick, treatment for screw worms, dipping for ticks, keeping up the fence around the pasture in which they were inclosed to prevent their getting out and straying away, watering, etc., and that as appellant knew that the mortgagor, Ferguson, did not reside in Liberty county, but that he resided in Bell county, quite a distance from the cattle, it was therefore necessary for him to procure some one to perform such duties, and that such caretaker would have to be paid his wages and expenses thus incurred. It was the manifest intention of the parties that the cattle should have the proper attention necessary to preserve and protect them under the circumstances, not merely for the benefit of the mortgagee, but also for that of the mortgagor, by preserving the value of the security, and affording, through the increase of the herd, a source of increase of means with which to pay the mortgage. The labor performed and expenses incurred were directly

for the benefit of the mortgaged property, and inured to the benefit of both mortgagor and mortgagee.

We, therefore, conclude that, when appellant loaned the money to Ferguson and took the mortgage upon the cattle in question, it had notice that the mortgagor, Ferguson, did not reside in Liberty county, where the mortgaged property was situated, and that the cattle being in a large pasture in said county, was under the charge of a caretaker, and that such caretaker was necessary to the welfare and preservation of the property, and that appellant impliedly agreed that the wages of such caretaker and the expenses incurred by him, necessary to and arising out of the performance of his duties as such caretaker, for the preservation and betterment of such cattle, should, in equity and good conscience, be paid before it has the right to claim said cattle under its chattel mortgage lien.

[6] Appellee insists that "the trial court erred in its conclusions of law upon which its judgment is predicated, wherein it concluded that, by reason of plaintiff's oral contract of employment with the defendant Ferguson to attend to and care for Ferguson's cattle, the plaintiff was the owner of an equitable lien on said cattle, which was prior (superior) to the chattel mortgage liens of appellant on the said cattle." We cannot agree to this contention. The labor performed by appellee and the expenses incurred by him were for the protection, betterment, and preservation of the property. Without the services rendered and the expenses incurred by appellee, the property, or at least a very considerable portion of same, in all probability would not have existence. His services and attention saved them from the certain destruction with which they were threatened, as was found by the court, and is fully supported by the evidence, and is not questioned by appellant; hence, as above held, appellee was entitled to an equitable lien on same for his pay.

[7] Article 5671, Vernon's Sayles' Civil Statutes, provides that:

"Nothing in this title [title 86, Liens] shall be construed or considered as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it [anything contained in title 86] in any manner affect or impair other liens arising at common law or in equity, or by any statute of this state, nor any other lien not treated of under this title."

The proper construction of this article is that liens and their priorities existing independent of the statute shall be and are preserved without impairment (American Type Founders' Co. v. Nichols, 110 Tex. 4, 214 S. W. 303), and, therefore, a chattel mortgage lien cannot be considered as superior to an equitable lien for services rendered and expenses incurred by one in caring for and preserving the mortgaged property, since the equitable lien exists independently of the statute. Bank v. Laughlin (Tex. Civ. App.) 210 S. W. 617; Barton v. Wichita River Oil Co. (Tex. Civ. App.) 187 S. W. 1045 (bottom page, second column); Bank v. Smith, 108 Tex. 272, 192 S. W. 533, 2 A. L. R. 771; Association v. Cochran, 60 Tex. 625; McIlhenny v. Binz, 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 705; Provident Institution v. Mayor et al. of Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, 28 L. Ed. 1102; Reeves v. Russell, 28 N. D. 265, 148 N. W. 654, L. R. A. 1915D, 1149, and note; Jones on Liens, § 744; 6 C. J. 1138, par. 90.

In Provident Institution v. Mayor et al. of Jersey City, supra. it is said:

"That which is given for the preservation and betterment of the common pledge is in natural equity fairly entitled to the first rank in the tableau of claims."

Appellant has received the entire benefit of the services and expenditures of appellee in the protection, preservation, and betterment of the property mortgaged, and, furthermore, it appearing, as we have above held, that when the mortgages were executed appellant impliedly agreed that the services of a caretaker were necessary to the welfare and preservation of the property, therefore, the mortgagor, Ferguson, acted under the implied consent of appellant in having appellee as such caretaker to perform the labor and incur the expense shown in the necessary care and preservation of the property, and hence appellant is estopped from asserting that its chattel mortgage lien is superior to the equitable lien of appellee. Overland Automobile Co. v. Findley (Tex. Civ. App.) 234 S. W. 108, 109.

The judgment is affirmed.