**STATE v. LOWMAN et al.**

**No. 1811.**

Court of Civil Appeals of Texas. Eastland.

March 4, 1938.

Rehearing Denied April 1, 1938.

Pat M. Neff, Jr., of Austin, for appellant.

Butts & Wright, of Cisco, and Chas. E. Coombes, of Stamford, for appellees.

FUNDERBURK, Justice.

Mrs. Elizabeth A. Lowman (joined pro forma by her husband) brought this suit against Alexander A. Walton and Walton Refining Company, a corporation, to recover upon a $4,000 note, executed November 18, 1935, by said Walton, payable to plaintiff; and to establish and foreclose a chattel mortgage lien upon property described generally as "All refinery property including buildings, machinery, equipment, etc., used and operated by A. A. Walton doing business as Walton Oil & Refining Company at Cisco, Texas, located on" certain described land. Walton Refining Company, the corporation, was named a defendant, the reason therefor appearing from the allegation that it was claiming some interest in the property, averred to be subject, however, to the right, claim, and lien of the plaintiff. An additional cause of action for damages growing out of alleged fraud was asserted, immaterial to be considered herein, as no questions are presented regarding it.

There were a number of interventions allowed. Included among the interveners were the United States of America, the State of Texas, Universal Credit Company, a corporation, and J. S. Bridwell and Leland Fikes, operating under the trade-name of Bridwell & Fikes. The United States asserted a claim for gasoline and other excise taxes, claiming the right to a preferential lien on the properties of the defendant. The State of Texas asserted a claim for motor fuel taxes (occupation taxes) alleged to be secured by a statutory tax lien on the property of defendant in the hands of the receiver, who had been appointed; such tax lien alleged to be paramount to any and all other liens of every kind and character. Universal Credit Company sought recovery on a note and foreclosure of a chattel mortgage lien against a certain Ford truck which had been sold by said intervener to Walton. Bridwell & Fikes claimed certain fuel oil in the hands of the receiver under an alleged bill of sale from defendant to them, or the proceeds of the

sale of said fuel oil, both before and after the receivership, but before any of the taxes were due.

All the property was sold by the receiver upon an agreement of the parties that the proceeds were to be held in lieu thereof to abide the result of the suit.

The defendant Alexander A. Walton made default. The Walton Refining Company, although appearing, filed no answer contesting the causes of action alleged by plaintiff.

The court in a nonjury trial gave judgment for plaintiff and certain of the interveners, as prayed. It was adjudged that plaintiff had a chattel mortgage lien upon the property described in her mortgage, paramount and prior to all other liens; that Universal Credit Company had a chattel mortgage lien on the certain Ford truck of the defendant corporation, prior and paramount to all other asserted liens; that Bridwell & Fikes had a prior claim to the proceeds of the sale of fuel oil by the receiver and the value of that used by him, as well as the proceeds received by him from the sale of such fuel oil prior to the receivership. (This was an adjudication that said interveners had title to certain oil at the time of the accrual of the taxes and not Walton Refining Company.) Subject to the above (and the claim of the Phillips Petroleum Company in the sum of $151.91), the State was decreed a lien on all properties and assets of the defendant corporation in the hands of the receiver. And further subject to all the above, the United States was decreed to have a prior and preference lien upon the property.

All parties, except plaintiff and Universal Credit Company, Bridwell & Fikes, and Phillips Petroleum Company, excepted to the judgment and gave notice of appeal. The trial judge duly filed his conclusions of fact and of law.

The United States of America has filed no briefs. The judgment as to it will not be reviewed or disturbed. The State of Texas is the only other appellant.

The appeal presents for decision primarily the question of the validity of Vernon's Annotated Texas Civil Statutes, art. 7065a—7. The provisions of the statute in question read: "All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien, first and prior to any and all other existing liens, contract or statutory, legal or equitable, and regardless of the time such liens originated, upon all

the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, warehouses, office buildings and equipment, tank trucks or other motor vehicles, stocks on hand of every kind and character whatsoever used or usable in such business, including crude oil or other materials for the manufacture, refining, blending or compounding of motor fuels and the refined products therefrom and the proceeds from the sale of such materials and refined products, and any other property of every kind and character whatsoever and wherever situated devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business."

All motor fuel taxes for which the State claimed a lien were due and owing by Walton Refining Company, "distributor," and not by any other party to the suit. Such taxes accrued subsequent to the claims and liens of the above-named interveners. As to all property owned by said company and involved in this suit, said statute plainly purports to give the State the lien, with priority, as claimed by it. If the statute is valid in its provision for such priority, the judgment of the court below, particularly as regards the plaintiff Mrs. Lowman and intervener Universal Credit Company, rests upon erroneous conclusions of law properly challenged by this appeal, and must, therefore, be reversed.

Consideration of the question at issue may be approached by accepting, as a premise, the proposition that the Legislature had authority to enact said statutory provision, unless it contravenes some provision of the Constitution having the effect of a restriction or limitation upon such authority. There is, therefore, necessarily involved the inquiry as to whether there be any such restricting or limiting constitutional provisions.

It is recognized that an extremely important question is presented for our decision. It may be stated correctly in very different forms according to varying viewpoints. The question may be said to be: Is a statute valid which, after declaring the existence of a lien on all the property of a "distributor," as defined in the act, Vernon's Ann.Civ.St. art. 7065-1(c), devoted to, or used in, his business given to secure payment of occupation taxes levied upon the privilege of such distributor to

pursue such occupation or business, further provides that such lien shall be superior to any and all antecedent liens? The same question may otherwise be stated thus: Valid contract or statutory liens existing upon property upon which no taxes are due, or thereafter become due, if such property, subject to any such liens, is at the time, or afterwards becomes, the property of a distributor and is devoted to or used in his business; and such distributor becomes liable for subsequently accruing occupation taxes levied for the support of the state government upon the privilege of pursuing such occupation or business; has the Legislature the power to declare that a lien to secure payment of such taxes due and owing only by the distributor shall be superior to any such antecedent lien when, there being in the very nature of the circumstances no relation between the amount of taxes due and the value of any or all items of the property, it results necessarily that the entire property securing such antecedent lien may be appropriated to the payment of all the taxes, if the amount of taxes be equal to, or exceed, the amount of such proceeds?

If the said statute be valid in its declaration of priority, it authorizes the appropriation of all the property upon which A has a lien, and upon which no taxes are then due or thereafter become due and delinquent, to pay the debt of B, for which A is in no way liable, with the certain result that the obligation which A's lien secures is thereby impaired in value, or rendered totally worthless, depending wholly upon the value of such obligation without the security of such lien. If said statute be valid in the particular named, A may sell land of the value of $5,000 to B in consideration of $5,000 in vendor's lien notes. B may convey the land to C upon the latter's assumption of said notes. C may use the land in his business as a "distributor" and if he becomes indebted to the State for, say $5,000 occupation taxes, the State may appropriate the land entirely in the payment of such taxes to the complete destruction of the value of A's property. As certainly as the vendor's lien notes and/or the lien securing same constitute the private property of A, just so certainly can it, under the statutory provision in question, if valid, be wholly appropriated by the State without A's consent and without provision for compensation therefor, and the entire proceeds applied to the undoubtedly public purpose of supporting the state government. Such result will

not even be affected by the fact that C who alone owes the taxes may have other and wholly unincumbered property out of which enforced payment of the taxes may be made. Suppose C has sufficient other unincumbered property but not liable to the State's lien because it is not "devoted to or used" in his business as a distributor. There can be no question, we take it, that if the State has a superior lien on all the property it may foreclose and appropriate any particular part of it, although same be the sole security of A's notes, and C, who alone owes the taxes, may have other property sufficient to pay them.

We are not unmindful of the fact that although it may be apparent that the statute will work such hurt and injury to individuals as to shock the consciences of judges, the court has no jurisdiction, for that reason only, which may be invoked to declare the statute void.

In our investigation we have read something from the opinions of courts emphasizing the power of the sovereign state to subordinate the interests of individuals to the public interest. Without controverting that general proposition in a situation to which it properly applies, we are moved to remark that in our opinion there are some erroneous notions extant regarding sovereignty. The State, in the sense that the State is a party to this suit, does not possess sovereign power. It does not even claim to do so, since the source of the right herein asserted is attributed to an act of the Legislature. No informed person would contend that the Legislature is invested with the powers of sovereignty. Sovereignty does not speak its will very frequently. The only expressions of the will of sovereignty, to guide and limit governmental agencies in their functioning, are the Constitution of the United States and the Constitution of Texas. Sovereignty, through said Constitutions, withholds from the Legislature and all other agencies of government many of the powers of sovereignty. The voice of sovereignty says to the Legislature, among other things, that: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Const. art. 1, § 17. And again: "No citizen of this State shall be deprived of * * * property, privileges or immunities, * * * except by the due course of the law of the land." Id. § 19. Sovereignty, also speaking

its will through the Constitution of the United States, says, not only to the Legislature, the mere agent of state sovereignty, but to the people of Texas, who do have such sovereign power, except as delegated to the federal government: "Nor shall any State deprive any person of * * * property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. Amend., art. 14, § 1.

The foregoing statement of the effect of the statute in question shows, in our opinion, that it is in conflict, certainly with some, and perhaps with all, of the above constitutional restrictions on the power of the Legislature. That a note, bill, or bond constitutes property is so obviously true that we need not pause to argue the point. That a lien on property to secure any such obligation, the property being of such value as to give to secured obligations, otherwise of little or no value, the full face value thereof, is also property cannot be doubted. That under facts and circumstances of which this and other courts must take judicial knowledge, the statute in question may operate to destroy completely such property by the entire destruction of its value, without the consent of the owner, and without provision for his compensation therefor, is equally obvious. For what purpose? For the purpose of using the proceeds thereof for the support of the state government. No better example of a public purpose within the spirit and intent of the constitutional provision can well be imagined. There is just as complete a destruction in a particular case and impairment of value in other cases, of private property for, and the application of same to, public use, within the purpose of the constitutional restriction, as if the citizen's land be confiscated for a site for the state capitol.

No question of the taxing power of the State is involved. Let the fullest extent of the taxing power, ever declared by any court, be granted for the sake of argument. The statute in question may be fully sustained and its validity is not herein questioned, in so far as it must depend for support upon the nature and extent of the taxing power. Its validity is subject to challenge only on the ground that, granting the power to tax, which is one thing, the Legislature has no power to declare that without his consent and to declare that without his consent and without provision for his compensation, the property of an individual shall be appropriated to pay the debt of another due the State for a purely public purpose, thereby in practical effect appropriating such property to public use.

We have found little in the way of authority that may be regarded as helpful. The existence of a superior lien on land to secure payment of ad valorem taxes levied and annually assessed upon land may be granted. The decisions in State v. Bank of Mineral Wells, Tex.Civ. App., 251 S.W. 1107; Preston v. Anderson County Levee Imp. Dist., Tex.Civ. App., 261 S.W. 1077; Wood v. Scott, Tex. Civ.App., 48 S.W.2d 1024—cases principally relied upon by the State—deal with that kind of situation.

As already said, such is not the question here. Ad valorem taxes are subject to constitutional provisions of equality and uniformity. Const. art. 8, § 1. In theory, at least, they constitute but an insignificant part of the value of the property. Although the question is unnecessary for us to decide, and we are not to be understood as doing so, we think it may well be doubted whether the Legislature has the power to declare a lien on one item of property for the taxes due upon another, irrespective of any question of superiority. Article 8, § 15 of our Constitution, among other things, provides that: "The annual assessment made upon landed property shall be a special lien thereon." The section of which this is a part has for its evident subject matter the specification of means for the collection of taxes generally. The "special lien" declared on land is but one of such means. It is a familiar principle of constitutional law that, "where the manner of exercising a given power is prescribed the method thus designated is exclusive." 12 C.J. 730, § 169; Parks v. West, 102 Tex. 11, 111 S. W. 726. The Constitution, in the same connection, relating to the same subject matter, having declared, as to landed property, both a special lien and (as something else) the power of seizure and sale for taxes, but as to personal property only the power of seizure and sale, would seem thereby to deny by implication the power of the Legislature to provide for any other tax lien on personal property than the one specified; namely, seizure and sale for taxes. The authorized seizure of personal property for sale in discharge of

taxes due thereon is undoubtedly the legal equivalent of a special lien on such property. It has been so recognized. Cassidy Southwestern Commission Co. v. Duval County, Tex.Com.App., 3 S.W.2d 416; Salt City Co. v. Padgett, Tex.Civ.App., 186 S.W. 391. Although the question was not presented in Cassidy Southwestern Commission Co. v. Duval County, supra, just as it is not presented here, the logic of that decision strongly supports the view that said constitutional provision by implication prohibits the Legislature from giving a lien on personal property to secure taxes due only on other property. There is other support for the same view. It has long been established as the law by decisions of the Supreme Court that the constitutional tax lien on land does not exist to secure taxes due on other land, levied and separately assessed. Richey v. Moor, 112 Tex. 493, 249 S.W. 172, and authorities cited. In Edmonson v. City of Galveston, 53 Tex. 157, one of the many cases so holding (decided under a former Constitution) and to the same effect, however, as redeclared in Richey v. Moor, supra, under the present Constitution, referred to the rule as resulting from "this constitutional restriction." Applying the rule to city taxes as being no different from state taxes, the court said: "There is certainly nothing in the *language of the constitution* from which we can infer that a *different or more enlarged lien* should be had by towns and cities to secure and enforce the payment of municipal taxes than exists for those assessed in favor of the state." (Italics ours.) Thus, it appears that the reason why there exists no lien on one tract of land to secure taxes due only upon another is not merely because of the absence of legislation so providing, but because of a constitutional restriction upon the power of the Legislature so to provide. And, of course, if the Constitution inhibits a lien on land to secure taxes due on other land, the effect would be the same as to taxes on personal property or occupation taxes—not a tax upon property of any kind.

That materially different considerations may support priority of a lien upon property to secure taxes due upon the property from those to support such priority for taxes due on other property was noticed by the Supreme Court of Idaho in Scottish American Mortg. Co. v. Minidoka County, 47 Idaho 33, 272 P. 498, 500, 65 A.L.R. 663, wherein it was said: "This question, under similar statutes, has been before many courts, and with few exceptions the courts have always so construed the statutes as to give the lien of taxes priority over senior incumbrances, if at all, *only upon the property itself upon which the tax was levied.*" (Italics ours.) A conclusion of the court from many decisions was stated thus: "That an unqualified power of the state under the Constitution to take a mortgagee's interest in one property for a subsequent tax assessed upon another property is at least open to doubt appears from many of the foregoing decisions and is evident from a consideration of the principles involved. To do so obviously restricts the freedom of contract. If an owner cannot create a lien upon his land which shall be of definite value to the lienor, and not subject to impairment or extinguishment by events the lienor cannot foresee or control, the value of the land for hypothecation is seriously diminished. Liberty includes the right to make and enforce contracts, because such right is included in the right to acquire property. Mathews v. People, 202 Ill. 389, 67 N. E. 28, 63 L.R.A. 73, 95 Am.St.Rep. 241. Freedom of contract is also within the protection of the Fourteenth Amendment to the Federal Constitution. Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L. Ed. 1042, 29 A.L.R. 1446."

But the fact must not be lost sight of, and cannot be overemphasized, that we are not dealing with a question of property taxes and liens securing same. If it be granted that there is no constitutional restriction upon the power of the Legislature to declare by statute the taxes due on one tract of land are secured by a lien on another tract of the same ownership; that taxes due on any personal property are secured by a lien on all the land and other personal property of the one owing the taxes, or even that occupation taxes due upon no property whatever are secured by a lien on all property, both real and personal, of the tax delinquent, that does not, in our opinion, constitute even an argument that such lien perforce only of a statutory declaration of its superiority over all other liens may effectively operate so as materially to impair, much less utterly destroy, the value of private property of one who owes no taxes, and whose property consists of obligations secured by antecedent liens on property upon which no one owes any taxes.

That the statute under consideration cannot be given literal effect in at least one particular, which it may be admitted is not controlling in this case, but believed to be nonetheless persuasive upon the question at issue, may, we think, be so conclusively demonstrated as to command universal assent. Let us suppose a contest between the claim of a lien by a city for ad valorem taxes on land devoted to or used in the business of a distributor and the claim of the State for like occupation taxes involved herein. The Constitution in reference to the city's claim for ad valorem taxes declares "that the annual assessment made upon landed property shall be a special lien thereon." But the Legislature, by the statutory provision in question, declares that the lien to secure taxes due by the motor fuel distributor on the same land shall be "a preferred lien first and prior to any and all other preexisting liens, contract or statutory, legal or equitable, regardless of the time such lien originated." If there be insufficient property to satisfy both claims, is it not perfectly obvious that the operation of the statute would have the practical effect of destroying the lien declared by the Constitution? Just so long as the Constitution be recognized as the supreme law of the land, the statute in question cannot operate to effect such a result.

Statutes plainly declaring or susceptible to the construction, that they give precedence to liens over antecedent liens have been rarely sustained as having such effect. Such statutes have been sustained in some cases in this state on the theory that the antecedent lienholder cannot in legal contemplation be injured, as, for instance, where the superior lien is given for improvements, actually or presumably enhancing the value of his security, or otherwise beneficial to the lienor, as where it is necessary to the preservation of the property, etc. These and other instances are discussed in Texas Bank & Trust Co. v. Smith, 108 Tex. 265, 192 S.W. 533, 2 A.L.R. 771.

Other statutes purporting to give subsequent liens superiority over pre-existing liens have been denied operation by construing them as not showing the legislative intent that they shall have such effect.

Examples of these are discussed in American Type Founders' Co. v. Nichols, 110 Tex. 4, 214 S.W. 301. In Hedeman v. Newnom, 109 Tex. 472, 211 S.W. 968, 969, the Supreme Court, speaking through Judge Phillips, said: "Generally, all such liens are held to be inferior to that of the existing mortgage since it is not to be supposed that a statute was intended to violate the fundamental rights of property by making a lien later in time superior to a prior mortgage without the mortgagee's consent."

In the instant case it would be a perfect example of sophistry to undertake to sustain the statutory provision in question on the theory that the Legislature did not intend the effect contended for by the State. Notwithstanding this, we see no reason why the statute may not be given effect, unless invalid by reason of other constitutional objections not presented upon the face of this record, to the extent that it does not exceed the power of the Legislature, since to do so would enable the statute, in part at least, to operate in accordance with the legislative intent. Under this view the statute may still be effective to grant the lien as declared, restricted to such interest in property as the distributor owing the taxes may have.

We shall dispose of the case as to appellees Bridwell & Fikes without other discussion than to say we think a question of ownership of the oil, the proceeds of which was decreed to them, was at least an issue of fact concluded by the findings of fact of the trial judge. The statute in question, as sweeping and comprehensive as it is in its several provisions, does not, we think, purport to give a lien on property other than the property of a distributor. By the express terms of the statute it applies to "property of any distributor devoted to or used in his business as a distributor." Ownership of the property by the distributor and its devotion to, or use in, the business of the distributor are concurrent conditions to the applicability of the statute to any property.

It is our conclusion that the judgment of the court below should be affirmed, and it is accordingly so ordered.