**PRESTON et al. v. ANDERSON COUNTY LEVEE IMPROVEMENT DIST. NO. 2.**
**(No. 2891.)**

(Court of Civil Appeals of Texas. Texarkana.
May 1, 1924. Rehearing Denied
May 15, 1924.)

**1. Levees and flood control ⬾22—Lien of district tax held superior to antedating vendor's lien.**

Lien for special tax by a levee district created pursuant to Laney Act (Acts 35th Leg. 4th Called Sess. (1918) c. 44 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt]), which is similar to Cannales Act (articles 5107—267 to 5107—276), under authority of Const. art. 16, § 59, as amended in 1917, levied to pay district's bonded indebtedness, *held* superior to pre-existing vendor's lien against same land, and antedating enactment of constitutional amendment, notwithstanding absence in latter amendment and section 42 of the act (Vernon's Ann. Civ. St. Supp. 1922, art. 5584¼nn) of express words making such lien a superior one, on theory lien to secure payment of tax levied for governmental purpose is superior to all contract liens.

**2. Constitutional law ⬾154(1)—Contract not impaired within Constitution unless its value lessened.**

Obligation of contract is not impaired within the meaning of the Constitution, unless the value of the contract has been lessened by the law complained of.

**3. Taxation ⬾4—Generally, property rights and contracts are subject to state authority to levy taxes.**

Generally, all property rights are acquired and held and all contracts made subject to state's authority to levy its taxes and collect its revenue for support of the government and to enable it to carry on.

**4. Constitutional law ⬾161—Giving lien of special tax priority over pre-existing contract lien held not impairment of contract.**

The mere fact that a lien for special taxes for improvements, presumably adding to value of incumbered property, is given a priority over a pre-existing contract lien, *held* not sufficient to show prima facie value of affected contract has been reduced within federal and state Constitutions prohibiting impairment of contractual obligations.

**5. Levees and flood control ⬾22—State reclaiming and preserving property may make cost of benefits debt superior to pre-existing contract liens.**

The state, when exercising its governmental power for reclaiming and preserving property, may make the cost of such benefits a debt superior to pre-existing contract incumbrances.

**6. Taxation ⬾1—Amount collected in general taxes is presumably repaid by state.**

Generally what is collected in the general taxes is presumably more than repaid in the general protection furnished by the state to its citizens and the property within its limits.

**7. Constitutional law ⬾161—Levees and flood control ⬾2—Subordination of pre-existing vendor's lien to subsequently created lien of levee district tax held not unconstitutional as impairment of contractual obligation.**

As to a special tax by a levee district created pursuant to Laney Act (Acts 35th Leg. 4th Called Sess. [1918] c. 44 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½ to 5584½tt]) as authorized by Const. art. 16, § 59, as amended in 1917, against land to pay district's bonded indebtedness for improvements made, which tax is made a lien superior to pre-existing contract liens against such land, *held* subordination of defendants' pre-existing vendor's liens against same land, to such subsequently created tax lien, was not unconstitutional as impairing obligation of contract, where defendants' security was enhanced beyond the amount of the tax, as a result of it.

**8. Taxation ⬾4—Private property rights held subject to proper exercise of taxing power.**

It is essential to enable the state to exercise its legitimate governmental functions that all private property rights be held subject to the proper exercise of the taxing power.

**9. Constitutional law ⬾145—Inhibition against impairment of contracts not applicable to contract which state may subordinate to taxing power. ·**

While the state cannot use its taxing power as a shield for invading contract rights, before that limit upon the state's authority applies, it must appear the contract involved belongs to a class which the state cannot make subordinate to its taxing power, or that the state is proceeding arbitrarily or unlawfully.

Appeal from District Court, Anderson County; W. R. Bishop, Judge.

Suit by the Anderson County Levee Improvement District No. 2 against C. S. Preston, executor of the estate of Richard Lloyd,

---
⬾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

deceased, and others, who sought affirmative relief. From a judgment granting insufficient relief, defendants appeal. Affirmed.

N. B. Morris, of Houston, N. B. Morris, Jr., of Palestine, and Vinson, Elkins, Wood & Pollard, of Houston, for appellants.

Campbell & Sewell, of Palestine, and Dabney, Goggons & Ritchie, of Dallas, for appellee.

HODGES, J. The Anderson county levee improvement district No. 2, the appellee in this suit, was organized in 1918 under the provisions of chapter 44 of the Acts of the Fourth Called Session of the 35th Legislature (Vernon's Ann. Civ. St. Supp. 1922, art. 5584½ et seq.). The purpose for which the improvement district was organized was to construct drains and levees for the reclamation of lands subject to overflow. Soon after its creation the proper officers proceeded, in accordance with the statute, to assess and fix the benefits and damages to accrue to the lands lying within its territorial limits as a result of executing the scheme of reclamation contemplated. Thereafter, and for the purpose of securing the necessary funds, the improvement district issued bonds aggregating the sum of $200,000. These bonds were subsequently sold, and are now held by private individuals. In order to create an interest and sinking fund for the payment of those bonds at maturity, a tax was levied upon the lands lying within the district and apportioned according to benefits received. For the year 1920 two tracts of land subject to the tax above mentioned were returned as delinquent because of the nonpayment of the district taxes levied. One was a tract of 2,-278.73 acres, and the other a tract of 662.98 acres, both owned by Dan La Roe and Fagan Parker jointly. The aggregate amount assessed against those two tracts was $8,-087.75, of which $5,000 was paid within the time prescribed by law, leaving a balance of $3,087.75 still due. By an amended petition filed in January, 1923, the improvement district seeks to enforce the collection of that balance, together with the legal penalty prescribed by law. It prays for a personal judgment against the owners of the land, and for a foreclosure of a tax lien against the property itself.

Several parties besides La Roe and Parker were made defendants. Among them were C. S. Preston, executor of the estate of Richard Lloyd, deceased, and Great Southern Life Insurance Company. These parties claim to hold liens against the land, which they assert are superior to the tax lien claimed by the improvement district.

The Great Southern Life Insurance Company pleaded that in August, 1916, the land involved in this suit was owned by W. L. Hill and Ida A. Hill, who, for value received, executed and delivered to the insurance company their promissory note for the sum of $15,000, bearing interest at the rate of 7 per cent. per annum, maturing five years after date; that in order to secure that debt Hill and wife executed a deed of trust on 1,944.7 acres of land, which covers all or a portion of the land involved in this proceeding. It further alleges that thereafter the land was sold and conveyed by the owners to Dan La Roe and Fagan Parker, who assumed the payment of the above-mentioned indebtedness, which is still due and unpaid. It asks for a judgment against the parties mentioned, and for a foreclosure of its lien against the land, which it alleges is superior to the tax lien asserted by the improvement district. As a basis for claiming that priority it is alleged that this contract lien arose before the law authorizing the creation of the improvement district had been enacted, and before the constitutional amendment authorizing the enactment of such a law had been adopted by the people.

The defendant C. S. Preston answered alleging, in substance, that in December, 1917, Richard Lloyd, now deceased, sold and conveyed 1,656.79 acres, which covered a part of the land in controversy, to W. L. Hill, and as a part of the purchase price took from Hill 40 vendor's lien notes in the sum of $1,000 each, payable on or before 10 years after date, with interest at the rate of 6 per cent. per annum, and the usual attorney's fees in the event the notes were placed in the hands of an attorney for collection. It was further alleged that the notes also contained a further provision that in the event an installment of the interest, which was payable annually, was not paid, the holder had the option to declare all of the notes due and to enforce collection according to law; that in order to secure the payment of the above indebtedness a vendor's lien was retained in the deed and duly acknowledged in each of the notes. It was further alleged that as additional security for the payment of the indebtedness Hill, joined by his wife, in December, 1917, executed and delivered to Lloyd a deed of trust upon 617 acres of land and 1,312.7 acres of land, which is a part of the land involved in this suit; and that this deed was duly recorded as required by law. In December, 1917, Hill sold and conveyed the above-described land to Dan La Roe and Fagan Parker, who assumed the payment of the purchase-money notes according to their terms. The defendant Preston admits that the lien asserted by him for the benefit of the decedent's estate is inferior to the lien held by the Great Southern Life Insurance Company. He asks for a judgment against the makers of the note, and for a foreclosure of his lien subject to that of the Great Southern Life Insurance Company. He asks that he have judgment of priority over the lien claimed by the improvement district for the unpaid taxes. As a basis for that prior-

ity he urges substantially the same facts set up by the Great Southern Life Insurance Company; that is, that his lien existed before the improvement district was created.

It appears that the facts are substantially as alleged by the parties in the pleadings referred to.

The case was submitted to the court without a jury, and a judgment rendered in favor of the improvement district for the amount sued for and directing a foreclosure of its tax lien against the land involved, making that lien prior to the contract liens set up by the Great Southern Life Insurance Company and C. S. Preston, Executor. The court also rendered judgment in favor of the other parties in all respects in accordance with their prayers for relief, except denying them priority over the claim of the improvement district.

[1] In this appeal the only issues involved are those which raise questions of law upon the admitted facts. The Great Southern Life Insurance Company and C. S. Preston contend that their contract liens are in this proceeding entitled to priority over the tax lien held by the improvement district.

In August, 1917, section 59 of article 16 of the Constitution of this state was amended so as to read as follows:

"(a) The conservation and development of all the natural resources of this state, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, * * * inland and coastal waters, and the preservation and conservation, of all such natural resources of the state are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

"(b) There may be created within the state of Texas, or the state may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the Constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject-matter of this amendment as may be conferred by law.

"(c) The Legislature shall authorize all such indebtedness as may be necessary to provide for all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness as may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such propositions shall first be submitted to the qualified property tax paying voters of such district and the proposition adopted."

See Laws 1917, p. 500.

This was known as the Conservation Amendment. In 1918, at a Fourth Called Session, the Legislature, for the purpose of putting that provision of the Constitution into effect, enacted two statutes; one known as the Cannales Act, which appears as articles 5107—267 to 5107—276 of Vernon's Statutes 1922; the other is known as the Laney Act, and appears as articles 5584½ to 5584½tt. Anderson county improvement district No. 2 was organized under the provisions of the Laney Act, and for the purpose of reclaiming overflow lands situated along the Trinity river in Anderson and Henderson counties. It is apparently conceded that the organization of this district was in all respects according to the statutory requirements. Some time after it was formed the proper officials of the district met and decided to issue bonds in the sum of $200,000 in order to secure the funds needed to make the contemplated improvements. The bonds were thereafter voted, issued, and sold to private parties. The lands subject to taxation were assessed according to the statute, and a tax levied for the purpose of creating an interest and sinking fund to pay the bonds at maturity. It conclusively appears that the taxes sued for are due and unpaid and constitute a valid lien on the lands in the district subject to taxation.

As a basis for their claim of priority for the contract liens appellants rely upon the admitted fact that those liens were created before any liability for the district taxes arose, and before any lien to secure such taxes had an existence. They show by the undisputed evidence that some of their contract liens existed before the amendment to the Constitution authorizing the creation of such improvement districts was adopted, and that all of them existed before the statute putting that provision of the Constitution into effect was enacted.

The appellants rest their appeal mainly upon the following propositions: (1) That a lien for a special tax should not be given priority over a pre-existing contract lien unless the law expressly so provides; (2) that if the act authorizing the organization of such improvement districts should be construed as creating a tax lien superior to pre-existing contract liens it would be repugnant to both the state and federal Constitutions, because such a construction of the law

would impair the obligations of appellants' prior contracts.

It is true, as argued by appellants, that there can be no lien upon specific property for the payment of taxes, unless one is created by law. But in this instance both the statute and the amended Constitution expressly provide for such a lien on the property subject to the district tax. The amendment, after authorizing the creation of a bonded indebtedness by such improvement districts, and the levy of an adequate tax, says:

"And such indebtedness shall be a lien upon the property assessed for the payment thereof."

The statute, section 42 of the original act, provides:

Article 5584½nn: "Tax collectors of levee improvement districts shall perform all duties and exercise all powers in respect to delinquent taxes due levee improvement districts as may be provided by law for the collection of delinquent state and county taxes, and the collection of· such delinquent levee improvement district taxes and sales.of property therefor shall be governed by the laws applying to the collection of delinquent state and county taxes. Taxes levied under this act shall be a lien upon the property against which they are assessed, and shall be payable and shall mature and become delinquent as may be provided by law for state and county taxes, and upon failure to pay such taxes when due the same penalty shall accrue and be collected as may be provided by law in case of non-payment of state and county taxes."

It will be observed that, while a tax lien is provided for, it is not expressly made superior to any other liens. But is such an express provision required? That question has been answered in the negative by prior decisions in this state. State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107; Storrie v. Houston City Street Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716. While those cases did not involve the construction of this particular statute, they both announced the controlling legal principle in the construction of similar statutes— that a lien to secure the payment of a tax levied for a governmental purpose is, from its very nature and purpose, superior to all contract liens. In the case first referred to above the court· had under consideration a state of facts strikingly similar to that involved in this case　The statute construed and applied was the Cannales Act, passed by the same Legislature which enacted the Laney Act, and under the authority of the same amendment to the state Constitution. The provisions of the Cannales Act fixing a lien for the taxes authorized were no more specific than are to be found in the Laney Act. The judgment of the trial court which gave priority to a contract lien was reversed and judgment rendered expressly holding that the tax lien was superior to the pre-

existing contract lien. The refusal of a writ of error in that case indicates the approval by our Supreme Court of the ruling there made. Since the decisions of the highest court of our own state must determine the proper construction of our own statutes and Constitution, it is useless to consult, or consider, similar, or dissimilar, decisions rendered by the courts of other states.

[2-7] We come, then, to the second proposition—that to subordinate the appellants' pre-existing contract liens to the subsequently created district tax lien violates those provisions of the federal Constitution which prohibit the passage of laws impairing the obligation of contracts. We are not unmindful of the ruling that the inhibition above referred to applies to the constitutional provisions adopted by states, as well as to their statutory enactments. Gunn v. Barry, 15 Wall. 610, 21 L. Ed. 212; Texas-Mex. Ry. Co. v. Locke, 74 Tex. 370, 12 S. W. 80; 1 Cooley on Taxation (3d Ed.) 117.

In Von Hoffman v. Quincy, 4 Wall. 548, 18 L. Ed. 403, an old case, the court said:

"Nothing can be more material to the obligation [of a contract] than the means of enforcement. Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution."

In Gunn v. Barry, cited above, the court was considering the legal effect that should be given to a homestead exemption adopted as a part of the Constitution of the state of Georgia in 1868. The plaintiff in the suit had recovered a judgment against the defendant in 1866, which under the law then existing became a lien on the land which the Constitution thereafter exempted from forced sale. In holding that the exemption was invalid as to pre-existing liens and liabilities, the court said:

"If the remedy is a part of the obligation of the contract, a clearer case of impairment can hardly occur than is presented in the record before us."

After a further discussion of the facts, it added:

"The legal remedies for the enforcement of a contract, which belong to it at the time and place where it is made, are a part of its obligation. A state may change them, provided the change involve no impairment of a substantial right."

If the law here under consideration is subject to the objection made, it is because it operates as an impairment of the substantial rights of the appellants to enforce the payment of the obligations of their debtors, by making the contract liens inferior to the tax

lien. In order to be heard upon this federal question the appellants must be able to show that they have sustained some material injury as a result of this altered status of their liens. In other words, it must appear that the security which they hold is materially diminished by making it, under the conditions presented, subordinate to the tax lien. Hooker v. Burr, 194 U. S. 415, 24 Sup. Ct. 706, 48 L. Ed. 1046; Tyler v. Registration Judges, 179 U. S. 405, 21 Sup. Ct. 206, 45 L. Ed. 252. It is not every alteration of the law of the remedy which entitles a party affected to invoke this constitutional restriction.

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract; and it does not impair it, provided it leaves the parties a substantial remedy according to the course of justice as it existed at the time the contract was made." Cooley Const. Limitations (7th Ed.) 405, 406.

In order to establish a case within the meaning of the federal inhibition it must be made to appear that the value of the contract involved has been lessened by the law complained of. Harrison v. Remington Paper Co., 140 Fed. 385, and cases collated on page 392, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314. The mere fact of giving priority to a lien for special taxes, levied for the purpose of paying the cost of making improvements which presumably add to the value of the incumbered property, is not sufficient to show prima facie that the value of the affected contract has been reduced.

As a rule, all property rights are acquired and held, and all contracts made, subject to the authority of the state to levy its taxes and collect its revenue for the support of the government, and to enable it to carry on legitimate governmental agencies for special purposes. Under our system of government taxes are not levied for tribute, but in order to secure and maintain the essential benefits which governments only can supply. What is collected in general taxes is, presumably, more than repaid in the general protection furnished by the state to its citizens and to property within its limits. It may likewise be assumed that special assessments levied for special purposes are more than repaid in the general and special benefits secured by the improvements made with the special funds. There seems to be no question as to the power of the Legislature to give a statutory lien priority over pre-existing contract liens, where the object is to secure a charge necessary for the preservation of the property. Texas Bank & Trust Co. v. Smith et al., 108 Tex. 265, 192 S. W. 533, 2 A. L. R. 771. In the case here referred to, our Supreme Court held that the Legislature had the authority to make a lien given to secure water for irrigation purposes superior to pre-existing contract liens. This was upon the ground that the junior lien was to secure water needed to enable the mortgagor to grow the crops on which the prior mortgages were to take effect. Upon the same principle, and for a stronger reason, the state, when exercising its governmental power for reclaiming and preserving property, may lawfully make the cost of such benefits a debt superior to pre-existing contract incumbrances.

The authority of the state to create improvement districts, as governmental agencies, for the irrigation of arid lands, and for the reclamation of swamp lands, by the construction of levees and drains, has long been settled by the decisions of the federal Supreme Court. Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Houck v. Little River Drainage Dist., 239 U. S. 254, 36 Sup. Ct. 58, 60 L Ed. 266; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; C. B. & Q. R. R. Co. v. Illinois, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831; State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107. Other cases might be cited, but these are sufficient.

In the case first referred to above the court said:

"The expense of such works may be charged against parties specially benefited, and be made a lien upon their property. All that is required in such cases is that the charges shall be apportioned in some just and reasonable mode, according to the benefit received. * * * Whenever a local improvement is authorized, it is for the Legislature to prescribe the way in which the means to meet its cost shall be raised, whether by general taxation, or by laying the burden upon the district specially benefited by the expenditure. * * * The rule, that he who reaps the benefit should bear the burden, must in such cases be applied."

In the second case cited above the court had under consideration the validity of a tax levied by a drainage district similar to the appellee in this suit. In discussing its character and authority Associate Justice Hughes said:

"It was constituted a political subdivision of the state for the purpose of performing prescribed functions of government. * * * These drainage districts, as the Supreme Court of the state has said, exercise the granted powers within their territorial jurisdiction 'as fully, and by the same authority, as the municipal corporations of the state exercise the powers vested by their charters.' * * * And with respect to districts thus formed, whether by the Legislature directly or in an appropriate proceeding under its authority, the Legislature may itself fix the basis of taxation or assessment, that is, it may define the apportionment of the burden, and its action cannot be assailed under the Fourteenth Amendment unless it is palpably arbitrary and a plain abuse."

In this case there is no contention that there was any arbitrary action in the organization of the present improvement district, and in passing upon the issues of law raised we have a right to assume that the conditions existed which authorized the organization of a reclamation district; that the lands embraced within its limits were swamp lands, subject to damaging overflows, and have been or will be reclaimed by the improvements contemplated, for which the tax was levied. We may also assume, as true, that it has been legally and fairly determined, after proper notice, that the value of all the land in the district has been, or will be, increased by these improvements, to an amount equal to or in excess of the taxes levied. If those facts do not appear, then the law has not been complied with, and no such objection has been made in this appeal. If those facts are true, then where is the injury to the contract rights of the appellants? What grounds have they for saying that the value of their contracts has been lowered as a result of the prior tax lien when it conclusively appears that the value of the security upon which they depend for the value of their contracts has been enhanced beyond the amount of the tax, and as a result of the levy and collection of the tax? Do not they, as well as the owners, come within the rule stated above: "He who reaps the benefit should bear the burden?"

[8] But considering the question from another viewpoint: If a state may lawfully levy and collect a tax for the reclamation of its swamp lands, and make that tax a lien upon the lands specially benefited, without the express consent of every landowner affected, it logically follows that the tax lien can be made superior to all pre-existing contract liens, regardless of when these arose. It is essential, in order that a state may exercise its legitimate governmental functions, that all private property rights be held subject to the proper and just exercise of the taxing power. If this were not true, a state could not give to its citizens that degree of governmental aid and protection which governments are established to furnish. If the owner of the fee in lands situated within an improvement district must hold subject to this superior taxing power, upon what grounds can a mere lienholder claim an exemption? How can the owner confer upon another an immunity, which he, as owner, could not claim? Storrie v. City of Houston, supra.

[9] It is true, as stated in Murray v. City of Charleston, 96 U. S. 432, 24 L. Ed. 760, and referred to by appellants, a state cannot use its taxing power as a shield for invading contracts rights. But in order for that limitation upon state authority to apply it must appear that the contract involved belongs to a class which the state cannot make subordinate to its taxing power, or that, the state is proceeding in an arbitrary or unlawful manner. It by no means follows that all contract rights are above the taxing power. In Murray v. City the facts showed that the complainants in the suit were nonresident holders of bonds previously issued by the city of Charleston; that those bonds bore interest at the rate of 6 per cent. per annum. Some time after the bonds were sold the city undertook to levy a tax of 2 per cent. on them while in the hands of such nonresident holders. As a speedy and effective means of collecting the tax it authorized its officers to withhold the amount of that tax in the periodical payment of the interest. This, in effect, reduced the interest paid by the city upon its bonds to 4 per cent. per annum, and occurred after the bonds had passed into the hands of purchasers for value. The Supreme Court held that such an exercise of the taxing power was a clear infringement of the contract rights of the bondholders, and was repugnant to the Constitution. Other cases to support the same proposition are referred to by appellants, but are no more in point.

So far as the law of this state is concerned, we are of the opinion it is announced and settled by the decisions in State v. Bank of Mineral Wells, and Storrie v. Houston St. Ry. Co., previously referred to. The judgment of the district court will be affirmed.